UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANYA MULLIGAN, *et. al.*,

      Plaintiffs,

v.                                Case No.: 8:07-cv-1991-T-24MSS

FRANK FOUNDATION, *et. al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      **THIS CAUSE** comes on for consideration of Defendant Adoption Options, Inc.'s Motion to Dismiss (Dkt. 37), Plaintiffs' memorandum in opposition (Dkt. 53), and Defendant Adoption Options, Inc.'s reply to Plaintiffs' memorandum in opposition.[1] (Dkt. 61) In the Motion, Defendant Adoption Options, Inc. contends Plaintiffs' amended complaint should be dismissed for lack of personal jurisdiction, or in the alternative, transferred to the U.S. District Court for the Southern District of California, or the Court should order a more definite statement or strike redundant and immaterial matter.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      Defendant Adoption Options, Inc. is a non-profit California corporation engaged in the business of identifying and placing eligible foreign children with adoptive families in the United States. (Dkt. 31 at ¶ 9) Defendant Frank Foundation is a non-profit Maryland corporation engaged in identifying orphaned children available for foreign adoption and facilitating, through licensed adoption agencies, the adoption process. (Dkt. 40 p. 3)

---

[1] This matter had been referred to the Undersigned for a Report and Recommendation pursuant to Title 28, Unites States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla. (Dkt. 42).

On February 9, 2004, Plaintiffs Tanya and Michael Mulligan entered into an agreement with Defendants Adoption Options, Inc. and Frank Foundation whereby Defendants would facilitate the adoption of three minor children, E.M., M.M., and S.M.[2] (Dkt. 31 at ¶ 5, Dkt. 38 p. 8-23, Dkt. 40-2 p. 9-11)  Prior to the adoptions, Plaintiffs allege that Defendant Adoption Options, Inc. made several representations, including S.M. was a "healthy young boy" and M.M. was "gifted." (Dkt. 31 p. 4, 7)  The adoption of M.M. occurred in Russia on June 26, 2004, and the adoption of S.M. occurred in Russia on July 26, 2005. (Dkt. 38 at ¶ 19)  As alleged, after their respective adoptions, M.M. and S.M. began exhibiting unusual behavior. M.M. began physically abusing the other children, E.M. and S.M., abusing the family pet, and assaulting Plaintiffs Tanya and Michael Mulligan. (Dkt. 31 at ¶ 31)  S.M. began chewing his bedroom furniture, defecating on his classroom floor, and talking to himself. (Dkt. 31 at ¶ 22) On or about June 5, 2006, Plaintiffs Tanya and Michael Mulligan took M.M. and S.M. to Attachment Center West in California to have the children undergo extensive psychological testing. (Dkt. 31 at ¶¶ 23, 33)

On or about June 23, 2006, Plaintiffs moved from California to the state of Florida. (Dkt. 53-2 at ¶ 3)  During the first week of July 2006, Plaintiffs received the final reports from Attachment Center West that included formal diagnoses for M.M. and S.M. (Dkt. 53-2 at ¶¶ 5, 6)  M.M. was diagnosed with "Severe Oppositional Defiant Disorder, Attention Deficit Disorder, Bi-Polar I Disorder (Mixed), [and] Severe Reactive Attachment Disorder (Angry)." (Dkt. 31 at ¶ 33)  S.M. was diagnosed with "Severe Attention Deficit Disorder, Severe Frontal Lobe Dysfunction, Pre-Autism, PICA, Depression, Severe Reactive Attachment Disorder (Uninhibited), [and] an I.Q. of 68-72." (Dkt. 31 at ¶ 23)  After receiving the reports, Plaintiff Tanya Mulligan called Defendant Adoption Options, Inc.'s executive director, Brent Yoder, to

---

[2] The adoptions of S.M. and M.M. are at issue in this action.

inform him of the results of the children's psychological reports.  (Dkt. 53-2 at ¶ 7, Dkt. 38 at ¶

23)  Plaintiff Tanya Mulligan alleges that Brent Yoder responded that the children were

healthy and suggested that if Plaintiff Tanya Mulligan would "just 'accept the children's

behavior' and 'love' them, then everything would 'work out.'"  (Dkt. 53-2 at ¶ 7)

On April 4, 2008, Plaintiffs filed an amended complaint alleging Defendants[3] made

fraudulent misrepresentations, negligent misrepresentations, and fraudulently induced

Plaintiffs during and after the adoption transactions.  (Dkt. 31)  On April 21, 2008, Defendant

Adoption Options, Inc. filed a Motion to Dismiss.  (Dkt. 37)  In the Motion, Defendant Adoption

Options, Inc. contends that Plaintiffs' amended complaint should be dismissed for lack of

personal jurisdiction or, in the alternative, the Court should transfer venue of this action.

Specifically, Defendant Adoption Options, Inc. argues that Plaintiffs have failed to prove that

any of the alleged torts were completed in the state of Florida, subjecting Defendant Adoption

Options, Inc. to Florida's long-arm jurisdiction.  Additionally, Defendant Adoption Options, Inc.

argues that Plaintiffs' amended complaint as pled does not satisfy the Constitutional due

process requirement that it have had sufficient minimum contacts with the state of Florida to

justify haling it into court in this state.  Further, Defendant Adoption Options, Inc. contends

that Plaintiffs' amended complaint fails to comply with the Federal Rules of Civil Procedure

8(a) and 10(b) and that all redundant and immaterial matter should be stricken.

## II.    STANDARD OF REVIEW

In a federal diversity action, the law of the state in which the court sits determines

whether the court has personal jurisdiction over a nonresident defendant.  Jet Charter Serv.,

Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990); Prentice v. Prentice Colours, Inc., 779 F.

---

[3] Plaintiffs assert that Adoption Options, Inc. is a partner and agent of Frank Foundation.  The accuracy of this assertion is not determinative to the outcome of Defendant Adoption Options, Inc.'s Motion.

Supp. 578, 581 (M.D. Fla. 1991).  Under Florida law, the burden of establishing personal jurisdiction over the nonresident defendant rests with the plaintiff.  Future Tech. Today, Inc. v. OSF Heathcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). That is, the plaintiff must allege sufficient facts to "support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see Future Tech. Today, Inc., 218 F.3d at 1249.   However, Plaintiff is not required to plead detailed factual allegations in the complaint.  That is to say, "the pleading of long-arm jurisdiction under the Florida Rules of Civil Procedure is not an exercise in detailed factual allegations. . . . [P]leading the basis for long-arm jurisdiction is essentially notice pleading.  It is enough for the pleader to indicate the statutory provision under which the action is traveling."  McCarter v. Bigfoot Indus., Inc., 805 So. 2d 1028, 1032 (Fla. 4th DCA 2001); see Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A., 941 F. Supp. 1175, 1178 (M.D. Fla. 1996) (stating that a "plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state [long-arm] statute; it is not necessary to plead the supporting facts."); Fed. R. Civ. P. 8(a)(1) (2007) (stating that a complaint shall include a "short and plain statement of the grounds upon which the court's jurisdiction depends"); Fla. R. Civ. P. 1.070(h) (2007) (pleading the basis for long-arm jurisdiction is notice pleading).  In evaluating the sufficiency of a complaint in light of a motion to dismiss under Rule 12(b)(2), the pleaded facts must be accepted as true "to the extent they are not controverted by the defendant."  Meterlogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1352 (S.D. Fla. 2000); see Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 994-95 (11th Cir. 1983).

Once the plaintiff meets its burden, the burden shifts to the defendant to make a *prima facie* showing that the long-arm statute does not apply. Future Tech. Today, Inc., 218 F.3d at 1249. If the defendant meets this burden, the plaintiff is required to substantiate the conclusory jurisdictional allegations in the complaint by affidavits or other competent proof. Id. Where the evidence conflicts, the court must view all reasonable inferences in the light most favorable to the plaintiff.   Meterlogic, Inc., 126 F. Supp. 2d at 1352.

Upon consideration and for the reasons that follow, the Undersigned **REPORTS** and **RECOMMENDS** that Defendant Adoption Options, Inc.'s Motion to Dismiss (Dkt. 37) be **GRANTED**.

III.   **DISCUSSION**

In Florida, a court must conduct a two-part analysis when deciding whether it has personal jurisdiction over a nonresident defendant. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996); Venetian Salami Co. v. J.S. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). First, the court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction over the nonresident defendant. Sculptchair, Inc., 94 F.3d at 626. If the requirements of the statute are satisfied, the court must then determine whether sufficient minimum contacts exist between Florida and the defendant such that the exercise of the court's jurisdiction over the nonresident defendant would not offend "traditional notions of fair play and substantial justice." Id.

A.   **Due Process Considerations**

Assuming Plaintiffs have satisfied Florida's statute on long-arm jurisdiction, Plaintiffs have failed to demonstrate that the exercise of personal jurisdiction by application of the Florida long-arm statute would be consistent with due process. This is to say, even if injury

has been pled, jurisdiction still does not lie in this Court. To conduct the due process analysis, the Court must first determine whether a defendant had sufficient "minimum contacts" with the state of Florida. Sculptchair, Inc., 94 F.3d at 630-31. If so, the Court must additionally examine whether jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." Id.

    i.  **Minimum Contracts**

  To determine whether a defendant has had minimum contacts with the forum state, the Court considers three factors: (1) whether the defendant purposefully availed itself of the forum state; (2) whether the cause of action arose out of activities of which the defendant purposefully availed itself; and, (3) whether it was reasonably foreseeable that the defendant should anticipate being haled into court in the forum state. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985); Posner, 178 F.3d at 1220. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts with the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980).

  Plaintiffs contend that Defendant Adoption Options, Inc. has met the due process requirements of minimum contacts with the state of Florida. Plaintiffs assert that Defendant Adoptions Options, Inc. had "fair warning" that it might be haled into a Florida court when it allegedly misrepresented M.M. and S.M.'s health in the July 2006 telephone call and engaged in additional correspondence with Plaintiffs, specifically telephone conferences, e-mails, and U.S. Mail regarding post-adoption reports. (Dkt. 53 p. 9-10)

  Defendant Adoption Options, Inc. argues that any communications made in Florida were fortuitous and not sufficient to comport with the due process requirement of minimum

6

contacts. Defendant Adoption Options, Inc. avers that it does not have any office or agency in Florida; it is not registered or licensed to do business in Florida; it does not advertise in Florida; it does not have a telephone listing in Florida; it does not own any real or personal property in Florida; and, it does not pay taxes in Florida, or have a bank account in Florida. (Dkt. 37 p. 4 n. 2)  Furthermore, Defendant Adoption Options, Inc. contends that its representatives do not work, reside, or travel for business in Florida.  (Dkt. 37 p. 4 n. 2) Defendant Adoption Options, Inc. argues that it has only initiated contact with the state of Florida when contacting Plaintiffs to gather administrative information for post-adoption reports as required by the Russian Federation.  (Dkt. 39 at ¶ 21)  Plaintiffs offer no contrary evidence.

The Undersigned concludes that in light of the *de minimis* contact by Defendant Adoption Options, Inc. with the state of Florida, it did not purposefully avail itself of the rights and privileges of Florida law, nor was it reasonably foreseeable that Defendant Adoption Options, Inc. should have anticipated being haled into Florida courts.  Defendant Adoption Options, Inc. does not conduct business activities in Florida, it is not registered to do business in Florida, and neither of its officers, directors, or employees' works or resides in Florida.  Defendant Adoption Options, Inc.'s contacts with Florida were limited to contacting Plaintiffs for the purpose of completing post-adoption reports as required by the Russian Federation.  It has long been held that the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient to subject the defendant to jurisdiction in the forum state. Hanson v. Denckla, 357 U.S. 235, 253 (1958), see Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1034 (11th Cir. 1991) (The court found that the defendant did not have sufficient minimum contacts with the plaintiff's forum state reasoning

that it is was purely a matter of chance "that the calls originated from Florida rather than from Indiana or Idaho.") On the basis of Defendant Adoption Options, Inc.'s assertions, which Plaintiffs do not refute, the Undersigned finds that Defendant Adoption Options, Inc. did not have sufficient minimum contacts with the state of Florida.

### ii. Fair Play and Substantial Justice

Even if the minimum contacts requirement were met in this case, the assertion of personal jurisdiction does not comport with the notion of "fair play and substantial justice." "Minimum requirements of 'fair play and substantial justice' may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities." Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990) (citing Burger King, 471 U.S. at 477-78)). To determine whether the assertion of personal jurisdiction over a defendant comports with "fair play and substantial justice", the Court considers the following factors: (1) the burden on the defendant in defending the lawsuit; (2) the forum's state interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) the shared interest of the states in furthering fundamental substantive social policies. Id.

Other than Plaintiffs' obvious interest in obtaining convenient and effective relief, the other factors weigh in favor of Defendant Adoption Options, Inc. Plaintiff offers no reason that Florida would have a significant interest in adjudicating a matter which involves a defendant who has little to no contact with the state. Many of the witnesses (e.g., doctors, teachers, and agents of Defendants) and evidence in support of Plaintiffs' causes of action will be located outside the state of Florida. Moreover, the burden on Defendant Adoption

8

Options, Inc. would be substantial as it has no offices or employees in this state. As such, the Undersigned finds that the Court's exercise of jurisdiction over Defendant Adoption Options, Inc. would offend traditional notions of fair play and substantial justice.

### B.   Florida Long-Arm Statute Jurisdiction

As an alternative basis for granting the Motion to Dismiss, the Undersigned finds that Defendant Adoption Options, Inc. is not subject to personal jurisdiction pursuant to the Florida long-arm statute, Fla. Stat. § 48.193(1)(b). The District Court need not reach this issue, however, if her honor accepts that due process and traditional notion of fair play and substantial justice preclude the exercise of this Court's jurisdiction.

Plaintiffs assert that Section 48.193(1)(b) permits the Court to exercise specific jurisdiction over Defendant Adoption Options, Inc. due to alleged misrepresentations made by its employee, Brent Yoder, regarding the children's health during a July 2006 telephone call with Plaintiff Tanya Mulligan.  (Dkt. 53 p. 3-4)

Fla. Stat. § 48.193(1)(b) states that

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> . . .
>
> (b) Committing a tortious act with the state.

Fla. Stat. § 48.193(1)(b). Committing a tort in Florida "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications." Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002).

9

When the tortious act and the injury to the plaintiff occur in Florida, a defendant is subject to the jurisdiction of the Florida courts pursuant to Fla. Stat. § 48.193(1)(b). See, e.g., Jacobs v. Nadal, 777 So. 2d 1137 (Fla. 4th Dist. Ct. App. 2001) (The court recognized that a defendant's intentional conduct that took place and caused injury to the plaintiff in the state of Florida was sufficient to establish jurisdiction over the defendant pursuant to Section 48.193(1)(b)). The Florida courts are divided, however, on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects a party to jurisdiction in Florida pursuant to Section 48.193(1)(b). Several Florida district courts of appeal have concluded that injury alone in Florida does not satisfy Section 48.193(1)(b). See, e.g., Ernie Passeos, Inc. v. O'Halloray, 855 So. 2d 106,109 (Fla. 2d Dist. Ct. App. 2001) ("the mere fact that an injury to a Florida resident may have resulted is insufficient to establish jurisdiction in the Florida courts"); Casita, L.P. v. Maplewood Equity Partners, L.P., 960 So. 2d 854, 856 (Fla. 3d Dist. Ct. App. 2007) (The court held that an injury alone to a Florida plaintiff caused by a tortious act committed outside the state was not sufficient to invoke the court's jurisdiction pursuant to Section 48.193(1)(b)). Other Florida district courts of appeal have reached the opposite conclusion. See, e.g., Arch Aluminum & Glass Co., Inc. v. Haney, 964 So. 2d 228, 232 (Fla. 4th Dist. Ct. App. 2007) ("Section 48.193(1)(b) 'encompasses conduct where the Defendant acts outside Florida to directly cause injury or damage a person within this state'"), Deans v. Johns, 789 So. 2d 1072, 1076-77 (Fla. 1st Dist. Ct. App. 2001) (the commission of a tort for the purpose of establishing long-arm jurisdiction only requires that the place of the injury be within Florida). Absent a contrary decision by the Florida Supreme Court, the Eleventh Circuit has interpreted Section 48.193(1)(b) to apply to "defendants committing tortuous acts outside the state that cause injury in Florida." Poser v. Essex Ins.

Co., Ltd., 178 F.3d 1209, 1217 (11th Cir. 1999). The Undersigned, however, finds no authority to invoke jurisdiction under Section 48.193(1)(b) based solely upon allegations of a tortious act without resulting injury occurring in the state of Florida.

Injury, of course, is not to be confused with damages.  Injury is that reasonable foreseeable consequence of tortious conduct from which damages flow.  Thus, a person could have a car accident and sustain injury in California and the damages (i.e. pain and suffering, emotional distress) could continue to accrue in Florida, and yet no tort could be said to have occurred in Florida.  Likewise, a person could be defrauded into buying stock while living in another forum state and could subsequently move to Florida and continue to suffer the adverse affects of the tort here and no tort can be said to have occurred here.

In the amended complaint, at issue here, Plaintiffs allege fraudulent misrepresentation and negligent misrepresentation.[4]

> To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993).  To prove fraudulent misrepresentation, it must be shown that

> (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation.

---

[4] There is another claim for fraud in the inducement.  However, Plaintiffs do not allege that Defendant Adoption Options, Inc. committed any events or actions associated with this claim in the state of Florida.

Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). Thus, Plaintiffs' claims of fraudulent

misrepresentation and negligent misrepresentation have as elemental requirements that

Defendant Adoption Options, Inc. (1) purposely induced Plaintiffs and (2) this inducement

caused Plaintiffs to rely on the alleged misrepresentations to their detriment, resulting in

injury.

To meet this pleading requirement, the only allegation related to conduct in Florida is

that Plaintiffs allege that in July 2006, while in Florida, Plaintiff Tanya Mulligan called

Defendant Adoption Options, Inc.'s executive director, Brent Yoder, who is NOT in Florida, to

inform him about the results of the children's psychological reports. (Dkt. 53-2 at ¶ 7, Dkt. 38

at ¶ 23)  Plaintiff Tanya Mulligan alleges that Brent Yoder responded that the children were

healthy and suggested that Plaintiff Tanya Mulligan "just 'accept the children's behavior' and

'love' them, then everything would 'work out.'" (Dkt. 53-2 at ¶ 7)  Plaintiff Tanya Mulligan

alleges that she relied on Brent Yoder's statement that the children were healthy after the

July 2006 telephone call because of the trust and friendship that developed between the

parties over the course of the adoptions and that she trusted him "since he had a lot of

experience in adoptions." (Dkt. 53 p. 7-8, Dkt. 53-2 at ¶ 7)

Of course, Plaintiffs, Tanya and Michael Mulligan, contend they have sustained

damages, including costs for psychological testing, past and future medical costs for treating

M.M. and S.M., cost of life-long attendant care for M.M. and S.M., pain and suffering, and

emotional distress. (Dkt. 31 at ¶ 27, 37)  Further, Plaintiffs contend that M.M. and S.M. have

sustained damages associated with an aggravation and exacerbation of their mental disability

because the children did not receive earlier medical treatment.   (Dkt. 31 at ¶ 28, 38)  Their

allegations, however, would go to the damages Plaintiffs could prove for the injury of the

adoption of the children due to Defendant Adoption Options, Inc's alleged
misrepresentations.

In this regard, in the amended complaint, Plaintiffs refer only to Plaintiffs Tanya and
Michael Mulligan's reliance on statements made prior to the move to Florida.  For example,
"[p]rior to and inclusive of June 24, 2004, Defendant ADOPTION OPTIONS made several
representations to Plaintiffs TANYA and MICHAEL MULLIGAN for the purpose and intent to
induce said parents to adopt M.M, including but not limited to: "a. That M.M. was 'gifted' and
attended 'gifted school.' . . . Plaintiffs TANYA and MICHAEL MULLIGAN relied on the
statements made by ADOPTION OPTIONS that M.M. was 'gifted' and in 'gifted school' and
did adopt, and continued to care for M.M. based on those representations." (Dkt. 31 at ¶¶ 30,
36)  None of those representations or related undertakings by Plaintiffs in reliance on them
occurred in the state of Florida.

The only suggestion of a "tort" alleged to have occurred in Florida is the single
telephone call Plaintiff Tanya Mulligan made from Florida to Mr. Yoder.[5]  By the time the July
2006 telephone call occurred, Plaintiffs Tanya and Michael Mulligan concede that they knew
of the mental and physical limitations and challenges of their adopted children.  However,
accepting the allegations of reliance to be sufficient to establish the other element of the tort,
Plaintiffs concede in the amended complaint that at the time of the July 2006 telephone call,
Plaintiffs Tanya and Michael Mulligan had already been induced into the "wrongful adoption"
and had, thereby, accepted full responsibility for M.M. and S.M.'s health and welfare,
including their medical care.  Additionally, Plaintiffs Tanya and Michael Mulligan had already
taken the steps to provide the necessary medical care for the children.  M.M. and S.M. were

---

[5] The Court does not address the substantial question of whether the representations made in the July 2006
telephone call are even actionable in the absence of reasonable reliance.

psychologically tested and Plaintiffs Tanya and Michael Mulligan had received the test results along with recommendations for the children's care prior to the July 2006 telephone call. Plaintiffs have not alleged facts suggesting that any reliance on statements made by Brent Yoder concerning the health of M.M. and S.M. created any further or additional economic or noneconomic injury. Thus, Plaintiffs have not and cannot allege any injury occurred as a result of this single Florida contact.

Accordingly, the Undersigned finds that Plaintiffs have failed to establish that a tort occurred in Florida arising from the alleged July 2006 telephone communication. As such, the Undersigned finds that the Florida long-arm statute does not provide a basis for personal jurisdiction over Defendant Adoption Options, Inc.

As the Undersigned has determined that the Court lacks jurisdiction over Defendant Adoption Options, Inc., the Undersigned need not reach the issues of venue under U.S.C. § 1404(a), or the pleading requirements under Fed. R. Civ. P. 8(a), 9(b), and 10(b).

## IV.   CONCLUSION

In light of the foregoing, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that Defendant Adoption Options, Inc.'s Motion to Dismiss (Dkt. 37) be **GRANTED**.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 30th day of September 2008.

MARY S. SCRIVEN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).


Copies furnished to:
Presiding District Judge
Counsel of Record