UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANYA MULLIGAN, *et. al.*,

Plaintiffs,

vs. Case No.: 8:07-cv-1991-T-24MSS

THE FRANK FOUNDATION, *et. al.*,

Defendants.
_______________________________/

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes on for consideration of Defendant Frank Foundation's Motion to Dismiss the Amended Complaint or in the Alternative, Transfer Venue (Dkt. 40), Plaintiffs' memorandum in opposition thereto (Dkt. 55), and Defendant Frank Foundation's reply to Plaintiffs' memorandum in opposition.[1] (Dkt. 62) In the Motion, Defendant Frank Foundation contends Plaintiffs' amended complaint should be dismissed for lack of personal jurisdiction, or in the alternative, transferred to the proper forum, or the Court should order a more definite statement.

Plaintiffs argue two bases for the Court to assert jurisdiction over Defendant Frank Foundation. First, Plaintiffs contend that Defendant Frank Foundation is subject to this Court's exercise of general personal jurisdiction because its involvement with approximately 96 Florida families and the facilitation of ten adoption in Florida since Plaintiffs moved to Florida constitutes a general course of business in the state of Florida. Second, Plaintiffs contend that Defendant Frank Foundation is subject to this Court's exercise of specific personal jurisdiction because, as

---

[1] This matter has been referred to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla. (Dkt. 42).

a principal, it is liable for the torts committed by its agent, Defendant Adoption Options, Inc. The Undersigned **REPORTS** and **RECOMMENDS** Plaintiffs' amended complaint be **DISMISSED** as neither contention, in light of the facts as alleged in the amended complaint and prevailing legal standard, has merit.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Frank Foundation is a non-profit Maryland corporation engaged in identifying orphaned children available for foreign adoption and facilitating, through licensed adoption agencies, the adoption process. (Dkt. 40 p. 3) On February 9, 2004, Plaintiffs Tanya and Michael Mulligan entered into an agreement with Defendants Adoption Options, Inc. and Frank Foundation whereby Defendants would facilitate the adoption of three minor children, E.M., M.M., and S.M.[2] (Dkt. 31 at ¶ 5, Dkt. 38 p. 8-23, Dkt. 40-2 p. 9-11) Prior to the adoptions, Plaintiffs allege that Defendant Adoptions Option, Inc. made several representations, including S.M. was a "healthy young boy" and M.M. was "gifted." (Dkt. 31 p. 4, 7) The adoption of M.M. occurred in Russia on June 26, 2004, and the adoption of S.M. occurred in Russia on July 26, 2005. (Dkt. 40-2 at ¶ 9) As alleged, after their respective adoptions, M.M. and S.M. began exhibiting unusual behavior. M.M. began physically abusing the other children, E.M. and S.M., abusing the family pet, and assaulting Plaintiffs Tanya and Michael Mulligan. (Dkt. 31 at ¶ 31) S.M. began chewing his bedroom furniture, defecating on his classroom floor, and talking to himself. (Dkt. 31 at ¶ 22) On or about June 5, 2006, Plaintiffs Tanya and Michael Mulligan took M.M. and S.M. to Attachment Center West in California to have the children undergo extensive psychological testing. (Dkt. 31 at ¶¶ 23, 33)

On or about June 23, 2006, Plaintiffs moved from California to the state of Florida. (Dkt.

---

[2] The adoptions of S.M. and M.M. are at issue in this action.

55-2 at ¶ 3) During the first week of July 2006, Plaintiffs received the final reports from Attachment Center West that included formal diagnoses for M.M. and S.M. (Dkt. 55-2 at ¶¶ 5, 6) M.M. was diagnosed with "Severe Oppositional Defiant Disorder, Attention Deficit Disorder, Bi-Polar I Disorder (Mixed), [and] Severe Reactive Attachment Disorder (Angry)." (Dkt. 31 at ¶ 33) S.M. was diagnosed with "Severe Attention Deficit Disorder, Severe Frontal Lobe Dysfunction, Pre-Autism, PICA, Depression, Severe Reactive Attachment Disorder (Uninhibited), [and] an I.Q. of 68-72." (Dkt. 31 at ¶ 23) After receiving the reports, Plaintiff Tanya Mulligan called Defendant Adoption Options, Inc.'s executive director, Brent Yoder, to inform him about the results of the children's psychological reports. (Dkt. 53-2 at ¶ 7, Dkt. 38 at ¶ 23) Plaintiff Tanya Mulligan alleges that Brent Yoder responded that the children were healthy and suggested that Plaintiff Tanya Mulligan "just 'accept the children's behavior' and 'love' them, then everything would 'work out.'" (Dkt. 53-2 at ¶ 7)

On April 4, 2008, Plaintiffs filed an amended complaint alleging Defendants made fraudulent misrepresentations, negligent misrepresentations, and fraudulently induced Plaintiffs during and after the adoption transactions. (Dkt. 31) On April 21, 2008, Defendant Frank Foundation filed a Motion to Dismiss. (Dkt. 40) Defendant Frank Foundation contends that Plaintiffs' amended complaint should be dismissed for lack of personal jurisdiction or in the alternative, that the Court should transfer venue. Defendant Frank Foundation further contends that the amended complaint fails to comply with the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure and it fails to plead the fraud claim with the particularity as required by Rule 9(b) and 9(f) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

In a federal diversity action, the law of the state in which the court sits determines whether the court has personal jurisdiction over a nonresident defendant. Jet Charter Serv., Inc. v.

Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990); Prentice v. Prentice Colours, Inc., 779 F. Supp. 578, 581 (M.D. Fla. 1991). Under Florida law, the burden of establishing personal jurisdiction over the nonresident defendant rests with the plaintiff. Future Tech. Today, Inc. v. OSF Heathcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). That is, the plaintiff must allege sufficient facts to "support a reasonable inference that the defendant can be subjected to jurisdiction within the state." Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see Future Tech. Today, Inc., 218 F.3d at 1249. However, Plaintiff is not required to plead detailed factual allegations in the complaint. That is to say, "the pleading of long-arm jurisdiction under the Florida Rules of Civil Procedure is not an exercise in detailed factual allegations. . . . [P]leading the basis for long-arm jurisdiction is essentially "notice" pleading. It is enough for the pleader to indicate the statutory provision under which the action is traveling." McCarter v. Bigfoot Indus., Inc., 805 So. 2d 1028, 1032 (Fla. 4th DCA 2001); see Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A., 941 F. Supp. 1175, 1178 (M.D. Fla. 1996) (stating that a "plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state [long-arm] statute; it is not necessary to plead the supporting facts."); Fed. R. Civ. P. 8(a)(1) (2007) (stating that a complaint shall include a "short and plain statement of the grounds upon which the court's jurisdiction depends"); Fla. R. Civ. P. 1.070(h) (2007) (pleading the basis for long-arm jurisdiction is notice pleading). In evaluating the sufficiency of a complaint in light of a motion to dismiss under Rule 12(b)(2), the pleaded facts must be accepted as true "to the extent they are not controverted by the defendant." Meterlogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1352 (S.D. Fla. 2000); see Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 994-95 (11th Cir. 1983).

Once the plaintiff meets its burden, the burden shifts to the defendant to make a *prima*

*facie* showing that the long-arm statute does not apply. Future Tech. Today, Inc., 218 F.3d at 1249. If the defendant meets this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof. Id. Where the evidence conflicts, the court must view all reasonable inferences in the light most favorable to the plaintiff. Meterlogic, Inc., 126 F. Supp. 2d at 1352.

## III. DISCUSSION

In Florida, a court must conduct a two-part analysis when deciding whether it has personal jurisdiction over a nonresident defendant. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996); Venetian Salami Co. v. J.S. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). First, the court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction over the nonresident defendant. Sculptchair, Inc., 94 F.3d at 626. If the requirements of the statute are satisfied, the court must then determine whether sufficient minimum contacts exist between Florida and the defendant such that the exercise of the court's jurisdiction over the nonresident defendant would not offend "traditional notions of fair play and substantial justice." Id.

### A. General Personal Jurisdiction Pursuant to Fla. Stat. § 48.193(2)

Plaintiffs contend that Defendant Frank Foundation is subject to general personal jurisdiction pursuant to the Florida long-arm statute, Fla. Stat. § 48.193(2). Plaintiffs argue that because of Defendant Frank Foundation's involvement with approximately 96 Florida families and its facilitation of ten adoption in Florida since Plaintiffs moved to Florida, Defendant Frank Foundation has engaged in a "general course of business in Florida for pecuniary benefit." (Dkt. 55 p. 6)

Under Florida law, a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to


the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact" within the state. Woods v. Nova Cos. Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999). In order to establish "substantial and not isolated activity" in Florida, the activities of the business or person sought to be served pursuant to Fla. Stat. § 48.193(2) must be "considered collectively and show a general course of business activity in the State for pecuniary benefit." Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006) (quoting Dinsmore v. Martin Bluementhal Assoc., Inc., 314 So. 2d 561, 564 (Fla. 1975)). This standard is the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Due Process clause of the Fourteenth Amendment. Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002) Factors relevant to the determination of whether a nonresident's activities are continuous and substantial include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of clients served in Florida, and the percentage of overall revenue received from Florida clients. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 412 F.3d 1162, 1167 (11th Cir. 2005).

Defendant Frank Foundation contends that its limited contacts with Florida are insufficient to satisfy the general personal jurisdiction requirement for the state of Florida. Defendant Frank Foundation submits and Plaintiffs do not challenge that Defendant Frank Foundation does not maintain any offices in Florida; does not use, own, lease, or rent any real or personal property in Florida; does not have any representative, employees, or agents in Florida; does not have telephone listings in a Florida telephone directory; does not have any bank accounts in Florida; does not solicit its services in Florida; and none of Defendant Frank Foundation's employees, agents, or representatives regularly travel to Florida to promote or conduct its business. (Dkt.

40 p. 9)

Defendant Frank Foundation concedes that over its sixteen year history, it has worked with thirteen different adoption agencies to place 126 children with 96 families, who at some point after the children's adoption resided in Florida. (Dkt. 40 p. 9, 40-2 ¶ 24) Defendant Frank Foundation contends, however, that these placements represent only 2% of all the child placements with which it has been involved. (Dkt. 40 p. 9, 40-2 ¶ 24) Again, Plaintiffs do not challenge this percentage. Since Plaintiffs move to Florida, Defendant Frank Foundation contends that it has worked to facilitate the adoption of ten children who resided in Florida; however, the adoption agencies through which they were adopted where located outside the state of Florida. (Dkt. 40 p. 9-10, 40-2 ¶ 25)

Based on the foregoing, the Undersigned finds that Defendant Frank Foundation has demonstrated that its activities in Florida over the course of sixteen years are sporadic and isolated. There is no indication that Defendant Frank Foundation has a physical presence in Florida or directly solicits business in Florida. Moreover, the child placements associated with Florida represent a small portion of Defendant Frank Foundation's total child placements. Following Florida's case law, these sporadic placements are not sufficient to demonstrate continuous and substantial activity, absent of other activity within the state. See Horizon Aggressive Growth, 412 F.3d at 1167 (Defendant had six clients, which accounted for less than 5% of its revenue, and the court held that this did not support a finding of defendant engaging in a general course of business activity in Florida.); Snow v. DirecTV, Inc., 450 F.3d 1314, 1319 (11th Cir. 2006) ("Yarmuth's negotiations on DirecTV's behalf with some Florida residents, its seven appearances as counsel of record for DirecTV, and its representation of four Florida clients in Washington courts are not enough to establish general jurisdiction, when balanced against Yarmuth's lack of a physical presence in Florida, its non-solicitation of Florida clients,

and its deriving less than one percent of its revenues from matters connected with Florida. Yarmuth falls outside the scope of § 48.193(2).").

Accordingly, the Undersigned finds that Plaintiffs have not demonstrated that Defendant is subject to general personal jurisdiction pursuant to Fla. Stat. § 48.193(2).

**B. Specific Personal Jurisdiction Pursuant Fla. Stat. § 48.193(1)(b)**

Next, Plaintiffs contend that Defendant Frank Foundation is subject to the specific jurisdiction provision of the Florida long-arm statute, Fla. Stat. § 48.193(1)(b). Plaintiffs argue that the employees of Defendant Adoption Options, Inc. were agents of Defendant Frank Foundation and, as such, Defendant Frank Foundation, as a principal was liable for the tortious acts of its agents. Fla. Stat. § 48.193(1)(b) states that

> (1) Any person, whether or not a citizen or resident of this state, who personally <u>or through an agent</u> does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> . . .
>
> (b) Committing a tortious act with the state.

Fla. Stat. § 48.193(1)(b) (emphasis added).

Plaintiffs allege that Defendant Adoption Options, Inc.'s employee, Brent Yoder, working as Defendant Frank Foundation's agent, committed a tortious act when he allegedly made misrepresentations regarding the health of M.M. and S.M. during a July 2006 telephone call with Plaintiff Tanya Mulligan. <u>See</u> <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002) (Committing a tortuous act in Florida "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications.") Defendant Frank Foundation contends that Plaintiffs cannot demonstrate that Defendant Adoption Options, Inc. was either

an actual or apparent agent of Defendant Frank Foundation, and therefore it cannot be held liable for any of Defendant Adoption Option, Inc. employees' actions. Because the Undersigned finds that Plaintiffs have failed to establish that the representations made by Brent Yoder in the July 2006 call caused an injury in the state of Florida, as will be explained below, the Undersigned need not address the issue of whether there is an agency relationship between Defendants Adoption Option, Inc. and Frank Foundation.

When the tortious act and the injury to the plaintiff occur in Florida, a defendant is subject to the jurisdiction of the Florida courts pursuant to Fla. Stat. § 48.193(1)(b). See, e.g., Jacobs v. Nadal, 777 So. 2d 1137 (Fla. 4th Dist. Ct. App. 2001) (The court recognized that a defendant's intentional conduct that took place and caused injury to the plaintiff in the state of Florida was sufficient to establish jurisdiction over the defendant pursuant to Section 48.193(1)(b)). The Florida courts are divided, however, on the issue of whether a tortious act committed outside the state resulting in injury inside the state subjects a party to jurisdiction in Florida pursuant to Section 48.193(1)(b). Several Florida district courts of appeal have concluded that injury alone in Florida does not satisfy Section 48.193(1)(b). See, e.g., Ernie Passeos, Inc. v. O'Halloray, 855 So. 2d 106,109 (Fla. 2d Dist. Ct. App. 2001) ("the mere fact that an injury to a Florida resident may have resulted is insufficient to establish jurisdiction in the Florida courts"); Casita, L.P. v. Maplewood Equity Partners, L.P., 960 So. 2d 854, 856 (Fla. 3d Dist. Ct. App. 2007) (The court held that an injury alone to a Florida plaintiff caused by a tortious act committed outside the state was not sufficient to invoke the court's jurisdiction pursuant to Section 48.193(1)(b)). Other Florida district courts of appeal have reached the opposite conclusion. See, e.g., Arch Aluminum & Glass Co., Inc. v. Haney, 964 So. 2d 228, 232 (Fla. 4th Dist. Ct. App. 2007) ("Section 48.193(1)(b) 'encompasses conduct

where the Defendant acts outside Florida to directly cause injury or damage a person within this state'"), Deans v. Johns, 789 So. 2d 1072, 1076-77 (Fla. 1st Dist. Ct. App. 2001) (the commission of a tort for the purpose of establishing long-arm jurisdiction only requires that the place of the injury be within Florida). Absent a contrary decision by the Florida Supreme Court, the Eleventh Circuit has interpreted Section 48.193(1)(b) to apply to "defendants committing tortuous acts outside the state that cause injury in Florida." Poser v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1217 (11th Cir. 1999). The Undersigned, however, finds no authority to invoke jurisdiction under Section 48.193(1)(b) based solely upon allegations of a tortious act without resulting injury occurring in the state of Florida.

Injury, of course, is not to be confused with damages. Injury is that reasonable foreseeable consequence of tortious conduct from which damages flow. Thus, a person could have a car accident and sustain injury in California and the damages (i.e. pain and suffering, emotional distress) could continue to accrue in Florida, and yet no tort could be said to have occurred in Florida. Likewise, a person could be defrauded into buying stock while living in another forum state and could subsequently move to Florida and continue to suffer the adverse affects of the tort here and no tort can be said to have occurred here.

In the amended complaint, at issue here, Plaintiffs allege fraudulent misrepresentation and negligent misrepresentation.[1]

> To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

[1] There is another claim for fraud in the inducement. However, Plaintiffs do not allege that Defendant Adoption Options, Inc. committed any events or actions associated with this claim in the state of Florida.

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993). To prove fraudulent misrepresentation, it must be shown that

> (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation.

Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). Thus, Plaintiffs' claims of fraudulent misrepresentation and negligent misrepresentation have as elemental requirements that Defendant Adoption Options, Inc. (1) purposely induced Plaintiffs and (2) this inducement caused Plaintiffs to rely on the alleged misrepresentations to their detriment, resulting in injury.

To meet this pleading requirement, the only allegation related to conduct in Florida is that Plaintiffs allege that in July 2006, while in Florida, Plaintiff Tanya Mulligan called Defendant Adoption Options, Inc.'s executive director, Brent Yoder, who is NOT in Florida, to inform him about the results of the children's psychological reports. (Dkt. 53-2 at ¶ 7, Dkt. 38 at ¶ 23) Plaintiff Tanya Mulligan alleges that Brent Yoder responded that the children were healthy and suggested that Plaintiff Tanya Mulligan "just 'accept the children's behavior' and 'love' them, then everything would 'work out.'" (Dkt. 53-2 at ¶ 7) Plaintiff Tanya Mulligan alleges that she relied on Brent Yoder's statement that the children were healthy after the July 2006 telephone call because of the trust and friendship that developed between the parties over the course of the adoptions and that she trusted him "since he had a lot of experience in adoptions." (Dkt. 53 p. 7-8, Dkt. 53-2 at ¶ 7)

Of course, Plaintiffs, Tanya and Michael Mulligan, contend they have sustained damages, including costs for psychological testing, past and future medical costs for treating M.M. and S.M., cost of life-long attendant care for M.M. and S.M., pain and suffering, and

emotional distress. (Dkt. 31 at ¶ 27, 37) Further, Plaintiffs contend that M.M. and S.M. have sustained damages associated with an aggravation and exacerbation of their mental disability because the children did not receive earlier medical treatment. (Dkt. 31 at ¶ 28, 38) Their allegations, however, would go to the damages Plaintiffs could prove for the injury of the adoption of the children due to Defendant Adoption Options, Inc's alleged misrepresentations.

In this regard, in the amended complaint, Plaintiffs refer only to Plaintiffs Tanya and Michael Mulligan's reliance on statements made prior to the move to Florida. For example, "[p]rior to and inclusive of June 24, 2004, Defendant ADOPTION OPTIONS made several representations to Plaintiffs TANYA and MICHAEL MULLIGAN for the purpose and intent to induce said parents to adopt M.M, including but not limited to: "a. That M.M. was 'gifted' and attended 'gifted school.' . . . Plaintiffs TANYA and MICHAEL MULLIGAN relied on the statements made by ADOPTION OPTIONS that M.M. was 'gifted' and in 'gifted school' and did adopt, and continued to care for M.M. based on those representations." (Dkt. 31 at ¶¶ 30, 36) None of those representations or related undertakings by Plaintiffs in reliance on them occurred in the state of Florida.

The only suggestion of a "tort" alleged to have occurred in Florida is the single telephone call Plaintiff Tanya Mulligan made from Florida to Mr. Yoder.[2] By the time the July 2006 telephone call occurred, Plaintiffs Tanya and Michael Mulligan concede that they knew of the mental and physical limitations and challenges of their adopted children. However, accepting the allegations of reliance to be sufficient to establish the other element of the tort, Plaintiffs concede in the amended complaint that at the time of the July 2006 telephone call, Plaintiffs Tanya and Michael Mulligan had already been induced into the "wrongful adoption" and had,

[2] The Court does not address the substantial question of whether the representations made in the July 2006 telephone call are even actionable in the absence of reasonable reliance.

thereby, accepted full responsibility for M.M. and S.M.'s health and welfare, including their medical care. Additionally, Plaintiffs Tanya and Michael Mulligan had already taken the steps to provide the necessary medical care for the children. M.M. and S.M. were psychologically tested and Plaintiffs Tanya and Michael Mulligan had received the test results along with recommendations for the children's care prior to the July 2006 telephone call. Plaintiffs have not alleged facts suggesting that any reliance on statements made by Brent Yoder concerning the health of M.M. and S.M. created any further or additional economic or noneconomic injury. Thus, Plaintiffs have not and cannot allege any injury occurred as a result of this single Florida contact.

Accordingly, the Undersigned finds that Plaintiffs have failed to establish that a tort occurred in Florida arising from the alleged July 2006 telephone communication. As such, the Undersigned finds that, even assuming Defendant Adoption Options, Inc. was an agent of Defendant Frank Foundation, the Florida long-arm statute does not provide a basis for specific personal jurisdiction over Defendant Frank Foundation.

As the Undersigned has determined that the Court lacks jurisdiction over Defendant Adoption Options, Inc., the Undersigned need not reach the issues of venue under U.S.C. § 1404(a), or the pleading requirements under Fed. R. Civ. P. 8(a), 9(b), and 10(b).

## IV. CONCLUSION

In light of the foregoing, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that Defendant Frank Foundation's Motion to Dismiss (Dkt. 40) be **GRANTED**.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 30th day of September 2008.

**MARY S. SCRIVEN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies furnished to:
Presiding District Judge
Counsel of Record